COX, Circuit Judge,
concurring in part and dissenting in part:
I join the part of the court’s opinion that concludes that CAMP abandoned in the district court its claims that the 1994 Festival Ordinance violated the Georgia Constitution. But because it appears to me that the City of Atlanta’s repeal of the 1994 Festival Ordinance and adoption of the 2000 Festival Ordinance moots the claims that the 1994 Festival Ordinance violates the Federal Constitution, I respectfully dissent.
As the majority observes, “a superseding statute or regulation moots a case only *1327 to the extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot.” Naturist Soc’y, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir.1992). But “[w]here a law is amended so as to remove its challenged features, the claim for injunctive relief becomes moot as to those features.” Id. My comparison of the 1994 and 2000 ordinances and analysis of the parties’ arguments leads me to conclude that the superseding ordinance has materially altered the City’s approach to issuing festival permits, removing the challenged features of the prior ordinance and mooting CAMP’s claims for injunctive relief.
First, CAMP’s facial attack on the 1994 Festival Ordinance as content-based appears to be moot. CAMP argued that § 138-187 of the 1994 Festival Ordinance was impermissibly content-based because it distinguished between “political demonstrations” and “entertainment, dancing, music, dramatic productions, art exhibitions, [and] parades.” As the majority notes, § 138-187 of the 2000 Festival Ordinance (unlike that section in the 1994 Festival Ordinance) does not distinguish between political demonstrations and other expressive conduct.[1] Furthermore, the 2000 Festival Ordinance explicitly forbids the City’s Chief of Staff from basing a permitting decision on the content of the speech or the message to be conveyed by the festival. See Ord. No. 99-0-1940, § 138-204. Accordingly, the 2000 Festival Ordinance removed CAMP’s content-based challenge insofar as CAMP argued that the 1994 Festival Ordinance distinguished between political demonstrations and other expressive conduct.
Also moot is CAMP’s argument'that the 1994 Festival Ordinance’s fees were unconstitutional because they were manipulable according to the content' of the speech.[2] CAMP argued that the City could manipulate both the estimated attendance and the number of police officers required at a festival based on the content of the message to be delivered. The 2000 Festival Ordinance removes these challenged attributes in four ways: (1) the Chief of Staff is directed to be guided by the applicant’s estimated attendance for classification of the festival, unless the estimate was “made in palpable bad faith or otherwise grossly in error,” and the Chief of Staff must provide written reasons for declining to adopt the applicant’s estimate; (2) the Chief of Staff is directed not to consider counter-demonstrators in his evaluation of anticipated attendance; (3) the Chief of Staff is directed not to consider the content of any speech or message to be conveyed by a festival permit applicant;[3] and (4) the personnel hours worked by police officers are excluded from the definition of “extra personnel hours” to be billed to those who receive festival permits.[4] In the absence of these challenged features, CAMP’s claim that the fee provisions 'are unconstitutional appears to be moot. .
Finally, CAMP claimed that the 1994 Festival Ordinance’s permitting requirements for “outdoor festivals” were not narrowly tailored to serve a significant governmental .interest and leave open ample alternative channels of communication. The 2000 Festival Ordinance is more nar *1328 rowly tailored and provides additional alternative channels of communication; therefore, the original controversy between the parties is no longer before us. The 2000 Festival Ordinance narrows the definition of “outdoor festival” in two ways. First, an “outdoor festival” includes events that require “the erection of stages, barricades, utility poles, booths, tents, or other temporary structures, or the use of parked vehicles or of permanent structures,” in addition to meeting the 1994 Festival Ordinance’s definition. Ord. No. 99-0-1940 § 138-187. Second, any event with a scheduled duration of three hours or less does not fall within the new “outdoor festival” definition.[5] See id. This second narrowing of the “outdoor festival” definition also permits additional alternative means of communication. The 2000 Festival Ordinance also requires any time, place, and manner restrictions imposed by the City’s Chief of Staff to be based on constitutional criteria. See Ord. No. 99-0-1940 § 138-204(a). The ordinance has been “sufficiently altered so as to present a substantially different controversy from the one the district court originally decided.” Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla., 508 U.S. 656, 671, 113 S.Ct. 2297, 2306, 124 L.Ed.2d 586 (1993) (O’Connor, J., dissenting). I would therefore conclude that this claim is moot as well.
There must, of course, be a “present, live controversy in order to avoid advisory opinions on abstract propositions of law.” Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 777 F.2d 598, 604 (11th Cir.1985) (internal citation omitted). Because the 2000 Festival Ordinance removed the challenged features of the 1994 Festival Ordinance, the original controversy has been rendered a mere abstraction. See Naturist Soc’y, 958 F.2d at 1520. Accordingly, I would dismiss as moot CAMP’s appeal challenging the district court’s conclusion that certain aspects of the 1994 Festival Ordinance are constitutional.

. As noted by the majority, § 138-209 of the 2000 Festival Ordinance effectively excludes purely political speech from coverage. CAMP has not argued, however, that § 138-209 of the 2000 Festival Ordinance is impermissibly content-based, and this section provides a different mechanism for excluding purely political speech.

. CAMP also argued that under the 1994 Festival Ordinance the permit fees were unconstitutional because they were “not nominal,” since they included the costs of additional police protection. CAMP’s "not nominal” challenge to the fees is intertwined with its content-based challenge. Therefore, I conclude that all of CAMP’s fee challenges are moot.

. Ord. No. 99-0-1940, § 13 8-204(c)(2).

. See Ord. No. 99-0-1940, § 138-187.

. Although the majority correctly notes that there has been no alteration in § 138-204's requirement that the Chief of Staff deny any application where the applicant proposes to limit the use of public streets and parks under certain conditions, CAMP has not challenged on appeal this attribute of the ordinance.